**Brenda Lee Daniel HARRISON, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 11–95–319–CR.

Court of Appeals of Texas, Eastland.

Aug. 22, 1996.

Rehearing Overruled Sept. 19, 1996.

---

Phil Nichols, Stephenville, for appellant.

Mike Siebert, Criminal District Attorney, Eastland, for appellee.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD, Senior Justice.*

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

McCLOUD, Senior Justice (Assigned).

The jury found appellant guilty of possessing, with intent to deliver, more than 4 grams but less than 200 grams of methamphetamine. After finding that appellant had been previously convicted of delivery of methamphetamine, the jury assessed appellant's punishment at confinement for 25 years. We affirm.

On February 2, 1995, United States Probation Officers, Michael Everett Patterson and Ricky Ray Chittum, searched appellant's vehicle and found methamphetamine and drug paraphernalia. Appellant was on federal supervised parole release, and Patterson was her supervising probation officer.

Appellant urges in her first point of error that the trial court erred in admitting the methamphetamine and drug paraphernalia discovered in her automobile because the search and seizure was illegal. Specifically, appellant argues that the "stop" of appellant was illegal and that the consent to search was not voluntary.

The probation officers, Patterson and Chittum, had received information from a state parole officer and from appellant's mother that appellant was using and probably delivering drugs. The officers drove to a roadway intersection hoping that they might see appellant as she was driving to work. Appellant passed the officers, and they followed her and arrived at the building as appellant was walking up to the front door. Patterson approached appellant and told her that he "knew she was using drugs and did she have any in her possession." Appellant answered, "Yes, I do. It's in my purse in the vehicle." Appellant started walking towards her car, and Patterson stopped her and gave her the "Miranda warning."[1] Patterson asked appellant if she understood the warning and if she had any questions. Appellant replied that she understood the warning and that she had no questions. Patterson then asked appellant if she still wanted to get the drugs in her purse. Appellant answered that she did. She got her purse from the car; and, at

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Patterson's instructions, she emptied the purse on the trunk of her vehicle. Appellant then handed Patterson two small bags of methamphetamine, which had been in her purse and were wrapped in a paper towel.

Patterson and appellant talked about why she had started using drugs. Paterson asked appellant if she had any problem with the probation officers searching her automobile for further contraband or weapons. Appellant said she did not. Appellant then asked Patterson if he was going to arrest her; and he told her, "No." Patterson testified that, as probation officers, they have arrest authority when supervising probationers but that they rarely use it. The probation officers attempt to work with the person rather than arrest them.

While Patterson was talking with appellant, Chittum discovered more methamphetamine in the contents from appellant's purse. When Chittum found the third package of methamphetamine, Patterson decided to call the sheriff's department because of "security and policy." Patterson stated that at that point the whole scenario changed. There were too many drugs, it was getting dark, and they did not know what they had. Also, as a policy matter, the probation officers did not transport drugs unless the local law enforcement agencies were made aware of the drugs. A deputy sheriff arrived on the scene. The deputy advised the probation officers that he did not want to assume custody of the narcotics and that he was not going to arrest appellant. The deputy took the position that it was the probation officers' case. However, the deputy did provide the probation officers with a written consent to search form which appellant signed.

The probation officers then opened the trunk to appellant's automobile where they discovered more methamphetamine as well as many items of drug paraphernalia. Patterson then called the Department of Public Safety and discussed the situation with Lieutenant Don Bush. Patterson testified that he asked Bush if they could store the drugs with the Department of Public Safety until they could be tested at a later date. Bush was concerned that the probation officers were in that area at night, and he told Patterson he

was sending a trooper. In a few minutes, Department of Public Safety Trooper Curtis Price arrived on the scene and took possession of the narcotics. While Trooper Price was examining and documenting the narcotics and drug paraphernalia, appellant again asked Patterson if he was going to arrest her. Patterson answered, "No, Brenda, I'm not going to arrest you." Appellant then asked Patterson if the "D.P.S." was going to arrest her. Patterson replied, "The case is turned over, the drugs are turned over to them. I don't have anything to do with D.P.S." Trooper Price arrested appellant.

■ The Court of Criminal Appeals in *Garrett v. State*, 791 S.W.2d 137 (Tex.Cr.App. 1990), cited *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), and expressly recognized that probation supervision gives rise to special needs, "permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." The *Garrett* Court stated:

The opinions in *Morrissey, Latta [v. Fitzharris*, 521 F.2d 246 (9th Cir.1975)] *Rabb* and *Griffin*, indicate that probationers and parolees do not enjoy the same level of Fourth Amendment protection accorded defendants only suspected of a crime. This is not to say that a parolee has no constitutional rights against unreasonable arrest. Rather, as was stated in *Tamez v. State*, 534 S.W.2d 686, 692 (Tex. Cr.App.1976):

A diminution of Fourth Amendment protection and protection afforded by Article I, Sec. 9, Texas Constitution, can be justified only to the extent actually necessitated by the legitimate demands of the probation process. A probationer may be entitled to a diminished expectation of privacy because of the necessities of the correctional system, but his expectations may be diminished only to the extent necessary for his reformation and rehabilitation.

The Court in *Griffin* stated:

To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy

"the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593 [2600], 33 L.Ed.2d 484 (1972).

These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. See *State v. Tarrell*, 74 Wis.2d 647, 652–653, 247 N.W.2d 696, 700 (1976). These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. Recent research suggests that more intensive supervision can reduce recidivism, see Petersilia, Probation and Felony Offenders, 49 Fed Probation 9 (June 1985), and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes, see *id.*, at 4. Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however, so we next turn to whether it has been exceeded here.

See also LaFAVE, SEARCH AND SEIZURE § 10.10(c) (3d ed. 1996).

█ A probationer's constitutional rights are not violated when the supervising probation officer asks the probationer if he is complying with the terms of probation. The most significant term of probation is that the probationer commit no criminal acts. Thus, Patterson violated none of appellant's rights when he asked if she had any drugs in her possession. This was not an illegal "stop." Supervision of probationers would be an empty exercise if the supervisor could not question the probationer regarding the probationer's activities. Rehabilitation of the probationer and safety of the public demand that probation officers be allowed to randomly contact and interview the persons they are supervising. We point out that appellant was not being subjected to custodial interrogation when she told Patterson about the

drugs in her car. *Payne v. State*, 579 S.W.2d 932 (Tex.Cr.App.1979).

█ When they discovered the methamphetamine in appellant's automobile, the probation officers then had probable cause to search the car under the "automobile exception" which permits a search without a warrant. Patterson testified that he told appellant that he was not going to arrest her. Patterson stated that appellant was free to leave after he discovered the drugs in the purse. Under the facts, the probation officers were justified in searching appellant's automobile including the trunk. *Osban v. State*, 726 S.W.2d 107 (Tex.Cr.App.1986). The warrantless search was not illegal. See *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Montez v. State*, 608 S.W.2d 211 (Tex. Cr.App.1980); *Martin v. State*, 780 S.W.2d 497 (Tex.App.—Corpus Christi 1989, pet'n ref'd); TEAGUE, TEXAS CRIMINAL PRACTICE GUIDE § 32.04 (1995).

Since we have held that the probation officers could make a warrantless search of appellant's automobile, it is unnecessary for us to discuss appellant's contention that the search was illegal because her consent was not voluntary. Appellant's first point of error is overruled.

Appellant asserts in her second point of error that the trial court erred in permitting a prosecuting attorney, who was a witness, to remain in the courtroom during the trial. The pretrial hearing revealed that William C. Dowell, the second-chair prosecutor in the case, might be called as a rebuttal witness in the event that appellant testified and denied making certain statements to her Sunday school class. Dowell was a member of the class and was present when appellant made an incriminating statement to the members of the class. Appellant contends that the court violated TEX.R.CRIM.EVID. 613 which requires the court to exclude "witnesses" so that they cannot hear the testimony of other witnesses.

84 ■

■ Dowell was never called to testify as a witness by either party. Since Dowell did not testify at appellant's trial, no error was committed by the trial court. *Karnes v. State*, 873 S.W.2d 92 (Tex.App.—Dallas 1994, no pet'n). The cases cited by appellant are distinguishable. In the cited cases, the witnesses were allowed to testify after hearing the testimony of other witnesses. Appellant's second point of error is overruled.

■ Appellant challenges in her third and fourth points of error the legal and factual sufficiency of the evidence to support the conviction. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126 (Tex. Cr.App.1996); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991). When passing on appellant's factually insufficient challenge, we must consider and weigh all of the evidence and determine if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Clewis v. State, supra.*

Appellant cites *Emerson v. State*, 880 S.W.2d 759 (Tex.Cr.App.), *cert. den'd*, —— U.S. ——, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994), and argues that the evidence is insufficient because the chemist, J.R. Burch, who analyzed the substances found in appellant's car testified that the substances were methamphetamine. Appellant relies upon language in *Emerson* regarding the criteria that must be satisfied before evidence based on a scientific theory will be admissible. The issue in *Emerson* was whether the court erred in admitting the evidence over the defendant's proper objection. Here, appellant's objection at trial referred to the "illegal stop" and "lack of consent." Appellant did not object to the reliability of any of the tests performed by the chemist. Appellant's point of error challenges the sufficiency of the evidence, not the error in the admission of the evidence.

■ The chemist described the procedure used in analyzing the substances found in appellant's car. Burch testified that he had a degree in chemistry and that he was employed by the Department of Public Safety. He stated that, based on his scientific analysis, the substances, which the evidence showed came from appellant's automobile, were methamphetamine. We hold that a rational jury could find beyond a reasonable doubt that appellant was guilty; and, after examining all of the evidence, we hold that the evidence was factually sufficient to support the jury's verdict. Appellant's third and fourth points of error are overruled.

■ Appellant contends in her fifth point of error that the court erred in refusing her requested charge regarding the law of "investigative stop and detention" and the "arrest powers or search and seizure powers" of Patterson. Appellant's reliance on *Stone v. State*, 703 S.W.2d 652 (Tex.Cr.App.1986), and *Jordan v. State*, 562 S.W.2d 472 (Tex.Cr.App. 1978), is misplaced. In both *Stone* and *Jordan*, the evidence raised questions of "fact" which should have been resolved by the jury. No fact question is presented in this case. There is no dispute as to how the probation officers obtained the evidence. The court did not err in refusing the requested charge. TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Supp.1996); *Thomas v. State*, 723 S.W.2d 696 (Tex.Cr.App.1986); *Poulos v. State*, 799 S.W.2d 769, 772 (Tex.App.—Houston [1st Dist.] 1990, no pet'n). Appellant's fifth point of error is overruled.

■ The sixth point of error challenges the court's failure to include in the charge an instruction ordering the jury not to be influenced by what it surmised to be the opinion of the court respecting any matter involved in the case. Appellant has failed to show that she suffered some actual harm as a consequence of the alleged charging error. *Abdnor v. State*, 871 S.W.2d 726 (Tex.Cr. App.1994). The sixth point of error is overruled.

■ In her final point of error, appellant maintains that the trial court erred at the punishment stage of the trial in permitting evidence of an extraneous offense. Patter-

son testified, over objection, that his supervision of appellant resulted from her federal felony conviction of misprision. TEX. CODE CRIM. PRO. ANN. art. 37.07, § 3 (Vernon 1981 & Supp.1996) expressly provides that, after a finding of guilty, the defendant's prior criminal record becomes admissible. We note that appellant did not file, as authorized by Article 37.07, section 3(g), a "timely request" for notice of the State's intent to offer evidence of prior convictions. Appellant's "discovery" motion regarding extraneous offenses did not satisfy the requirements of Article 37.07, section 3(g). See *Espinosa v. State*, 853 S.W.2d 36 (Tex.Cr.App.1993). Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.