Michael Dewayne MITCHELL, Appellant,

v.

The STATE of Texas, State.

No. 2–96–112–CR.

Court of Appeals of Texas,
Fort Worth.

June 19, 1997.

Rehearing Overruled July 24, 1997.

William H. "Bill" Ray, Fort Worth, for Appellant.·

Tim Curry, Criminal District Attorney, Chuck Mallin, Chief of the Appellate Division, John A. Stride, David Kleckner, Michelle Hartmann, Assistant Criminal District Attorneys, Fort Worth, for State.

Before CHARLES F. CAMPBELL (Sitting by Assignment), DAY and LIVINGSTON, JJ.

**OPINION**

PER CURIAM.

Appellant was a juvenile at the time of the commission of the instant offense. He was indicted and tried for murder. He was convicted by a jury of murder, after being certified to stand trial as an adult, and the jury assessed punishment at life confinement in the Texas Department of Criminal Justice, Institutional Division and a fine of $10,000. In this appeal, appellant brings five points of error to this court. We reverse and remand for a new punishment hearing.

Although neither legal nor factual sufficiency of the evidence is challenged, a brief summary of the facts is helpful to the disposition of the case. On October 11, 1994, appellant was a passenger in a car driven by a friend. While driving on the street, appellant saw the victim and another man riding in a car in front of them. Thinking evidently that the victim was a rival gang member, the driver of appellant's car began pursuing the victim. During the pursuit, appellant was hanging outside the passenger side window flashing gang signs. Ultimately, appellant fired approximately thirty rounds of ammunition from a semi-automatic rifle at the victim's car. The victim was struck by two bullets and several days later, died of his wounds.

## ADMISSIBILITY OF STATEMENTS

Appellant gave three statements to police. The first was an oral statement given on December 29, 1994. The other two statements, given on January 10 and 11, 1995, were written statements that were ultimately admitted into evidence at trial. In his second point of error [1], appellant claims that the statements given by him on January 10 and 11 were tainted by the statement illegally taken from appellant on December 29. Appellant cites us to *R.C.S. v. State*, 546 S.W.2d 939, 948 (Tex.Civ.App.—San Antonio 1977, no pet.), for the proposition that, in the case of a subsequent confession, there must be an inquiry to determine whether there was an adequate warning to the accused that the first statement in no way affected the decision of the accused to give a subsequent statement. The State responds that this case is controlled by the decision of the Court of Criminal Appeals in *Griffin v. State*, 765 S.W.2d 422 (Tex.Crim.App.1989). We agree with the state.

In *Griffin*, a juvenile was interviewed by police after receiving *Miranda* warnings, but

in violation of section 51.09. TEX. FAM.CODE ANN. § 51.09(b)(1) (Vernon 1996). Later in the day the defendant gave a written statement in compliance with section 51.09, but as in the instant case, the magistrate was unaware that defendant had made a previous statement. The Court of Criminal Appeals focused on the voluntariness of the statements, holding that although the provisions of section 51.09 were not complied with, the defendant had failed to show that her first statement was involuntarily given. *Griffin*, 765 S.W.2d at 429. And it was essentially uncontroverted that her subsequent statement had been taken in compliance with section 51.09. *Id.*

■■■ In the instant case, as in *Griffin*, appellant's first oral statement was inadmissible because it did not comply with section 51.09, but there is no evidence that it was involuntarily obtained. Further, both of appellant's subsequent written statements were taken in compliance with section 51.09, and the trial court found that they were freely and voluntarily given. "At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony." *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). We are to limit our review of the trial court's rulings, both on the facts and legal significance of those facts, to a determination of whether the trial court abused its discretion. *Id.* Viewed in a light most favorable to the trial court's decision, we find there is ample evidence for his conclusion that appellant's two written statements were freely and voluntarily given, and that they were given independently and were untainted by the first oral statement. Appellant's second point of error is overruled.

## LESSER INCLUDED OFFENSE

In his third point of error, appellant complains that the trial court erroneously re-

---

1. In his second point of error, appellant brings forth a multifarious ground, alleging that statements taken from him were done so in violation of the Fourth, Fifth and Sixth Amendments to the United States Constitution, section 51.09 of TEX. FAM.CODE ANN, and were further tainted by a previously and illegally obtained oral statement. TEX. FAM.CODE ANN. § 51.09(b)(1) (Vernon 1996).

Since there are a number of legal theories embodied in this one point, it is multifarious. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim. App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). In the interest of justice, however, we will address the core argument made in this point.

fused to charge the jury on the lesser included offense of involuntary manslaughter. Appellant timely requested an instruction on involuntary manslaughter, but the trial court refused to include it in the charge. As support for his claim, appellant relies on a single line taken from one of the two written confessions admitted into evidence: "Then we pulled around in front of them and then that's when I started shooting out of the passenger window of the car at the Toyota." Appellant argues that this statement evidenced his intent to shoot at a car rather than a human being, therefore he would be entitled to a charge on involuntary manslaughter. The State counters, arguing that when the statement as a whole is examined, appellant's intent was to pay back a suspected rival gang member for a perceived past misdeed. We agree with the State.

### Applicable Law

■ In determining whether the appellant was entitled to a lesser included charge, we first look to see if the lesser included offense is included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record that would permit a jury rationally to find that the appellant is guilty only of the lesser offense and not the greater offense. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). In applying the test, the trial court should determine whether the evidence of the lesser offense would be sufficient for a jury to rationally find that the appellant is guilty only of that offense. *Id.* A charge on the lesser included offense of involuntary manslaughter [2] should have been given if there was "some evidence that would permit a jury rationally to find that appellant recklessly caused the death of the deceased, but not intentionally." *Adanandus v. State*, 866 S.W.2d 210, 232 (Tex. Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

**2.** Involuntary manslaughter can be a lesser included offense of murder. *See Tompkins v. State*, 774 S.W.2d 195, 211 (Tex.Crim.App.1987), *aff'd*

### Application of Law to Facts

■ There is no evidence in the record from which a rational jury could infer that appellant's actions were merely reckless and were not intentional. Appellant did not testify about his mental State nor was there any evidence offered that indicated that appellant was guilty only of consciously disregarding a substantial and unjustifiable risk in aiming at and shooting the deceased. It is a reasonable inference from reading the whole of appellant's written statements that he fired some thirty rounds of ammunition at the car containing the deceased in retaliation for prior misdeeds, real or imagined, of the deceased. There was no evidence that appellant was not aiming the gun, that he did not intend to fire it, or that he did not intend to shoot the occupants of the Toyota. The trial court properly refused an instruction on involuntary manslaughter. Point of error three is overruled.

### ACCOMPLICE CHARGE

In point of error four, appellant complains that the trial court erred in failing to charge the jury that Thadeus Smith was an accomplice. A timely request was made for such an instruction, but it was denied by the trial court. The record shows that Smith was riding in a separate car from the appellant's vehicle, and that appellant's vehicle passed Smith's car and got between Smith and the deceased. Smith testified he was on his way to a friend's house and fell in behind the deceased. He testified appellant's car passed him and settled behind the deceased's car, and that after shots were fired, he (Smith) turned off on another street. Smith admitted that he and appellant had been together earlier at a liquor store, and that they were following each other at the time of the shooting. Smith also testified the passenger in his car, Michael Bolden, flashed some signs at the vehicle containing the deceased. But he denied any conspiracy with appellant to get the deceased, and denied he knew appellant was going to shoot the deceased.

490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

## Applicable Law

An accomplice witness is an individual who participated with the accused before, during, or after the commission of the crime for which he is on trial. *Brooks v. State,* 686 S.W.2d 952, 957 (Tex.Crim.App.1985). Mere presence of the witness at the scene where an accused commits an offense is not alone sufficient to constitute that witness as an accomplice as a matter of law. *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App. 1986), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989). Where a claim that a witness is an accomplice witness rests upon the accomplice's involvement in the charged offense other than as a joint participant in the actual acts constituting the offense, the evidence must show affirmative participation by the witness in the offense. *Creel v. State,* 754 S.W.2d 205, 214 (Tex. Crim.App.1988).

## Application of Law to Facts

Although it is true that Smith had been with appellant before the shooting and that Smith's vehicle followed appellant's vehicle, there is no showing in the record by appellant that demonstrates any affirmative or overt act by Smith to promote the deceased's murder. Neither Smith nor Smith's vehicle was shown to be a part of any conspiracy to kill the deceased. Although appellant argues that his confession, admitted into evidence before the jury, raises or implicates Smith in the crime, we do not agree. In the confession, appellant affirmatively states that Smith was not involved in the shooting. Point of error four is overruled.

## EVIDENCE ON PUNISHMENT

In point of error five appellant complains that the trial court erred in failing to admit, at the punishment stage of the trial, a record offered by appellant certifying that appellant was no-billed in a murder case in 1994 in Harrison County. Appellant argues that the State was allowed to place in evidence a delinquency adjudication certification that was based on the same 1994 incident as the

no-billed murder. Appellant basically argues that he should have been permitted to introduce this document under the rule of optional completeness. *See* TEX.R.CRIM. EVID. 107.

## Applicable Law

A grand jury's authority and duty is limited to inquiring into criminal accusations and determining whether evidence exists to formally charge a person with an offense. *Rachal v. State,* 917 S.W.2d 799, 807 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). A grand jury's no-bill is merely a finding that the specific evidence brought before the particular grand jury did not convince them to formally charge the accused with the offense alleged. *Id.*

## Application of Law to Facts

In this case, appellant was a juvenile at the time of his no-bill by a Harrison County grand jury. He was subsequently adjudged to have committed delinquent conduct based on the same conduct for which he was no-billed. He thus was ultimately handled in the criminal justice system as a juvenile. There is no indication in the record about why this occurred. The burden was on appellant, as proponent of this evidence, to demonstrate to the trial court the relevance of this no-bill on the issue of punishment. *See* TEX.R.CRIM. EVID. 401. Appellant failed to do this. In his brief to this court, appellant argues that the jury was entitled to see the result of the no-bill under rule 107. This was no "act" to be completed under rule 107.[3] It was completed with the certification of the no-bill. The juvenile adjudication proceeding was, therefore, not a part of this same "act" for purposes of rule 107, but was a discrete proceeding in and of itself. Therefore, rule 107 is inapplicable to this situation. And since appellant has failed to demonstrate relevance apart from rule 107, we find that the trial court did not err. Appellant's fifth point of error is overruled.

---

**3.** "When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party the whole on the same subject may be inquired into by the other." TEX. R.CRIM. EVID. 107.

## EXTRANEOUS OFFENSES

In his first point of error, appellant complains that the trial court erroneously admitted some extraneous offenses in the punishment phase of his trial. The record reflects that on February 28, 1995, approximately one year before the beginning of the trial on the merits, appellant filed a document entitled "Motion to Give Notice of Extraneous Acts Under Art. 37.07, Code of Criminal Procedure." To this document is attached a certificate of service, certifying that the document was hand-delivered to the State by appellant's attorney, presumably on the same date. In March of 1996, after the voir dire examination had been concluded on the trial on the merits, the State gave written notice to appellant of extraneous offenses that it intended to offer during punishment. Appellant objected on the grounds the notice failed to provide the proper county, date and victim as required by article 37.07, section 3(g). TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.1997). The trial court deferred a ruling to the next day, at which time the State tendered notice that complied with the statute. Appellant objected that the State's compliance was untimely, but the trial court did not rule until after appellant was found guilty. The trial court found that appellant's notice was sufficient, but ruled that notice by the State was appropriate under the circumstances.

### Standard of Review

■ The standard of review for determining whether the trial court erred in admitting evidence is the abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App.1990). But when the trial court's admission of evidence rests, as it does in this case, on the construction and application of a statute such as article 37.07, section 3(g), the issue is a question of law, and our standard of review of the trial court's ruling is de novo. *See Espinosa v. State*, 853 S.W.2d 36, 38–39 (Tex.Crim.App.1993) (court

implicitly applied de novo standard of review); *Washington v. State*, 943 S.W.2d 501, 504–06 (Tex.App.—Ft. Worth 1997, no pet. hist.) (op. on reh'g) (in ruling on art. 37.07, section 3(g) notice issue, court implicitly applied de novo standard of review). *But see President v. State*, 926 S.W.2d 805, 809 (Tex. App.—Austin 1996, pet. ref'd.) (while not expressly applying a standard of review, court concluded by holding that trial court did not abuse its discretion).

■ The question presented in appellant's first point of error is one of first impression in this court: whether the delivery by a defendant, to the attorney for the State, of a copy of a motion directed to the trial court requesting a listing of extraneous offenses constitutes a proper request for notification of those offenses under article 37.07, section 3(g).[4]

### Other Courts

Two of our sister courts have addressed similar issues in recent cases. In *President*, the defendant filed a document entitled "Rule 404(b)[5] Request for Notice of Intent to Offer Extraneous Conduct." The court there observed that the instrument was more in the nature of a motion rather than a request and that therefore, the defendant was obligated to ask for and obtain a ruling from the trial court for his motion to constitute a timely request under article 37.07, section 3(g). *Id.* at 808. The court found that article 37.07, section 3(g) contains a stringent requirement that the defendant's request be directed to the state's attorney, a requirement not found in rule 404(b). *Id.* The Austin court concluded that the defendant's notice was not in compliance with section 3(g) and was therefore untimely. *Id.*

In *Harrison v. State*, 929 S.W.2d 80, 85 (Tex.App.—Eastland 1996, pet. ref'd), the defendant included a request for extraneous offenses in a global motion for discovery.

---

4. "The requirement under this subsection that the attorney representing the State give notice applies only if the defendant makes a timely request to the attorney representing the State for the notice." *Id.* at 809 n. 1

5. The notice requirement in rule 404(b) is as follows: "provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction." TEX.R.CRIM. EVID. 404(b).

The Eastland court found that the defendant had not filed a timely "request" for notice of the state's intent to offer extraneous offenses as required by section 3(g), and based its holding, as had the Austin Court in *President*, on the decision of the Court of Criminal Appeals in *Espinosa*.

In *Espinosa*, the defendant, as did the defendants in *President* and *Harrison*, filed a motion for discovery that included a request for disclosure of all extraneous offenses "which the State may raise during the trial of this cause." *Id.* at 38. The motion was filed in the trial court and a copy was served on the state, but the record did not show that it was ever ruled on by the judge. The Court of Criminal Appeals noted that, by its nature, a motion for discovery is addressed to the trial court, not the state, and it asks the trial court to order the State to produce evidence. *Id.* at 38. It noted that a discovery motion is not otherwise productive until it is ruled on by the trial court. *Id.* The court ultimately held that when a defendant relies on a motion for discovery to request notice pursuant to rule 404(b), it is incumbent upon him to secure a ruling on the motion to trigger the notice requirements of that rule. *Id.*

■ In the instant case, we are presented with a situation that is a hybrid of those presented in *President, Harrison,* and *Espinosa.*[6] Here, the appellant filed a global motion for discovery pursuant to article 39.14, which included a request for extraneous offenses "which would be admissible in the guilt/innocence and/or punishment phases of the trial." TEX.CODE CRIM. PROC. ANN. art. 39.14 (Vernon 1979). However, appellant filed a separate pleading entitled "Motion to Give Notice of Extraneous Acts Under Article 37.07 Code of Criminal Procedure." Within the body of this pleading, in paragraph III, appellant specifically pled "request is made to the State of Texas and its agents, to issue a written confirmation of compliance or non-compliance with the reasons stated therein within thirty days from the date of the file stamp affixed to this

motion." This separate pleading was filed with the clerk more than one year before the commencement of trial. It is true that this section 3(g) motion was directed to the court for action, but it also contained a specific request to the State for confirmation of compliance with article 37.07, section 3(g). We believe this request constituted adequate compliance with section 3(g), and that this request by appellant sets this case apart from *President, Harrison* and *Espinosa*. We conclude that appellant's request was both adequate and timely and that the state's response, coming after the completion of voir dire, was untimely because "reasonable notice [must be] given in advance of trial." We sustain appellant's first point of error.

■ Having concluded that error was committed, we must determine beyond a reasonable doubt whether the error made a contribution to the conviction or to the punishment. TEX.R.APP. P. 81(b)(2). Obviously, the error was committed during the punishment stage, so it did not contribute to the finding of guilt of the appellant. On the punishment phase, we first observe that appellant received the maximum sentence for this offense, life imprisonment and a fine of $10,000. The State argues, in its plea for a finding of harmless error, that appellant had access to prosecution files while preparing for trial. But the Court of Criminal Appeals has already held in *Buchanan v. State*, 911 S.W.2d 11, 14–15 (Tex.Crim.App.1995), that an "open file policy" by the State did not satisfy the notice requirement of rule 404(b), and even if the appellant did have knowledge of the existence of some of the extraneous acts, that fact would not be relevant to the issue of whether the failure to give proper notice was harmless error.

It is not seriously disputed that at least one or more of the extraneous acts used by the State at the punishment phase were not disclosed to appellant in compliance with article 37.07, section 3(g). It is impossible for us to know how much weight was attributed to this by the jury in deliberating punishment.

---

6. There is neither any indication in the record nor arguments advanced by the parties that the evidence in question was in the nature of rebuttal evidence. This court recently held that the no-tice requirement of art. 37.07, section 3(g) does not apply to evidence introduced to rebut defensive evidence. *Washington*, 943 S.W.2d at 506.

It is equally impossible to speculate upon what action or strategy appellant's attorney might have pursued had he received the requisite notice of these acts. We therefore cannot say beyond a reasonable doubt that the error did not contribute to the punishment assessed.

The judgment of the trial court is reversed and the cause is remanded for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon 1979 & Supp. 1997).