**Daryl Thomas McARTHUR, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 2–98–482–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 30, 1999.

Rehearing Overruled Oct. 7, 1999.

Fred Marsh, Denton, for Appellant.

Bruce Isaacks, Criminal District Attorney, and Pamela J. Moore, Michael Moore, and Paige McCormick, Assistants, Denton, for Appellee.

Panel B: LIVINGSTON, BRIGHAM, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

In twelve points, appellant Daryl Thomas McArthur appeals from his conviction on two counts of indecency with a child. In points one through four, he argues that the trial court erred by failing to suppress evidence obtained as a result of his telephone calls being traced. In his remaining points, appellant argues that several conditions of his community supervision are improper. Because we determine that there was no error in the trial court's failure to suppress the evidence, we overrule appellant's first four points. Because we conclude that the second sentence of term (gg) and all of term (ll) of appellant's community supervision were improper, we delete those terms and affirm the trial court's imposition of all other conditions of probation.

## I.  BACKGROUND

On July 10, 1997, appellant telephoned a crisis operator at the Denton County Mental Health and Mental Retardation Department ("MHMR"). In that conversation, appellant stated that he had fondled his twelve-year-old daughter. From appellant's tone and the nature of the conversation, the operator felt that someone, possibly appellant, was in danger. As a result, she temporarily placed appellant on hold and requested that the Denton Police Department (DPD) trace the call. While on hold, appellant hung up. The operator then reported the possible assault to Child Protective Services.

Later that same day, appellant called MHMR again. Kathleen Kern, another operator, answered. After a brief conversation, appellant abruptly hung up. Kern also requested that the call be traced because appellant had told her he thought about killing himself. Appellant called the following day and again spoke briefly with Kern. As before, Kern requested that the called be traced.

MHMR recorded the content of the first two conversations. MHMR's requests that the calls be traced was forwarded to the DPD. DPD, in turn requested General Telephone Electric (GTE) to trace the calls. GTE traced the calls to Services Programs for Aging Needs (SPAN), a nonprofit agency that provides busing and other services in Denton County.

Detective Bryan Lee then met with two SPAN supervisors and determined appellant's identity from MHMR's recordings and that he lived in nearby Argyle. Detective Lee referred the case to Tom Tackett of the Argyle Police Department, who began an investigation. Tackett interviewed appellant, at which time appellant admitted that he had fondled his daughter on three or four occasions. In a separate interview, appellant's daughter corroborated appellant's admission.

Appellant was charged with two counts of indecency with a child. He moved to suppress all evidence obtained as a result of the phone calls being traced. The trial court overruled appellant's motion to suppress, and appellant was convicted of both counts and placed on ten years' community supervision. This appeal followed.

## II. SUPPRESSION OF EVIDENCE

In points one through four, appellant argues that the trial court erred by failing to suppress evidence obtained as a result of his phone calls being traced.[1] Specifically, appellant contends in point one that a "trap and trace"[2] device was used and that its use was an unreasonable search under the Fourth Amendment. In point two, he argues that the trace was an unreasonable search under the Texas Constitution and that the subsequent admission of evidence obtained as a result of the trace was a violation of article 38.23 of the code of criminal procedure. In point three, he argues that the trace violated section 16.03 of the penal code and in point four, he contends the trace violated article 18.21 of the code of criminal procedure.

### A. Standard of Review

In *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim.App.1997), the court of criminal appeals clarified the standard of review to be used by appellate courts in reviewing a trial court's order on a motion to suppress evidence obtained through a search incident to a warrantless arrest. *Id.* at 87–89. In *Loserth v. State*, 963 S.W.2d 770 (Tex. Crim.App.1998), the court of criminal appeals stated that the *Guzman* construct applied to all motions to suppress. *Id.* at 771.

Determination of the appropriate standard of appellate review depends on the type of question presented. *See Guzman*, 955 S.W.2d at 87–89. *Guzman* recognizes three types of questions: (1) historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor; (2) application of law to fact questions, i.e., mixed questions of law and fact, when the ultimate resolution of those questions turns on an evaluation of credibility and demeanor; and (3) mixed questions of law and fact when the resolution of those questions does not turn on an evaluation of credibility and demeanor. *See id.* at 89; *see also Loserth*, 963 S.W.2d at 772. In reviewing the first two categories of questions, an appellate court should show "almost total deference" to a trial court's determination because of a trial court's exclusive fact-finding role and because a trial court is in an appreciably better position to decide the issue. *Guzman*, 955 S.W.2d at 89. In reviewing the third type of question, where the resolution of the issue does not turn on an evaluation of credibility and demeanor, an appellate court is in as good a position to review the issue as the trial court; therefore, an appellate court determines the issue independently, or *de novo*. Because the historical facts in the present case are not in dispute, the proper standard of review is *de novo. See Loesch v. State*, 958 S.W.2d 830, 831–32 (Tex.Crim. App.1997); *Guzman*, 955 S.W.2d at 87.

### B. Fourth Amendment

For Fourth Amendment purposes, the issue in this case is whether appellant could have a "justifiable, reasonable, or legitimate expectation of privacy" in the information revealed when his telephone calls were traced. *See Smith v. Maryland*, 442 U.S. 735, 741, 99 S.Ct. 2577, 2581, 61 L.Ed.2d 220 (1979). Determination of a privacy interest requires an examination of two issues: whether appellant, by his conduct, "has exhibited an actual (subjective) expectation of privacy" and whether this subjective expectation of privacy is one which "society is prepared to recognize as 'reasonable.'" *Id.* at 740, 99 S.Ct. at 2580.

---

1. Appellant does not complain of MHMR's recording of the conversations.

2. Absent enumerated exceptions, a "trap and trace device" means a device that records an incoming electronic or other impulse that identifies the originating number of an instrument or device from which a wire or electronic communication was transmitted. *See* Tex. Code Crim. Proc. Ann. art. 18.21, § 1(7) (Vernon Supp.1999).

■ The Supreme Court has unequivocally stated that the electronic impulses indicating the transmission or reception of received telephone communications are automatically and voluntarily conveyed to the telephone company; thus, no legitimate expectation of privacy exists. *See id.* at 744–45, 99 S.Ct. at 2582. This, in large part, is based on the fact that telephone subscribers have no reasonable expectation that records of their calls will not be made and that those records will not be disclosed. *See United States v. Clegg,* 509 F.2d 605, 610 (5th Cir.1975). Fourth Amendment protection extends only to the content of a telephone conversation and not the fact that a call was placed or that a particular number was dialed. *See Smith,* 442 U.S. at 744–45, 99 S.Ct. at 2582–83.

Here, GTE monitored only the electronic impulses indicating the origin of the incoming calls; nothing else was noted. Consequently, appellant has no legitimate expectation of privacy; therefore, this was not a search proscribed by the Fourth Amendment. We overrule point one.

## C. Article I, Section 9

■ In point two, appellant argues the trial court erred by admitting evidence seized in violation of his state constitutional guarantee against unreasonable searches. That is, he argues the trace violates article I, section 9 of the Texas Constitution and because it does, it also violates article 38.23 of the code of criminal procedure, the statutory exclusionary rule. *See* TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1999). He cites us to *Richardson v. State,* 865 S.W.2d 944 (Tex.Crim.App.1993) for the proposition that a "pen register" may be a search under the Texas Constitution.[3] The State concedes that under the state constitution a legitimate privacy interest may exist in phone records, but it contends appellant has no standing to complain because the privacy interest in the phone records belongs to appellant's employer. We agree.

■ The purpose of both the Fourth Amendment and article I, section 9 is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *See Green v. State,* 566 S.W.2d 578, 582 (Tex.Crim.App.1978). Those safeguards protect people not places. *See id.*

■ Under this approach, the substantive question of what is a search is effectively merged into the procedural question of "standing" to challenge such a search. *See Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). It is now a matter, not only of whether the government has breached some "reasonable," "justifiable," or "legitimate expectation of privacy" that existed in a particular place, *Katz v. United States,* 389 U.S. 347, 351–53, 88 S.Ct. 507, 511–12, 19 L.Ed.2d 576 (1967), but also of who reasonably, justifiably, or legitimately harbored that expectation. *See Chapa v. State,* 729 S.W.2d 723, 727 (Tex.Crim.App.1987). Furthermore, the accused has the burden of proving facts establishing a legitimate expectation of privacy. *See Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim.App.1988).

■ In this case, the record does not indicate that appellant had a subjective belief that the numbers dialed from SPAN's telephone were private. While appellant may not have anticipated that his calls could or would be traced, more is required to establish a subjective expectation of privacy. Furthermore, appellant

---

3. We note that *Richardson* dealt with a "pen register" rather than a "trap and trace" device. The distinction is that a pen register records the numbers that are dialed from a specific phone, whereas a "trap and trace" device identifies the number from which a call was placed. Despite the distinction, for the reasons enunciated in *Richardson,* use of a "trap and trace" device *may* constitute a search under article I, section 9. *Cf. Richardson,* 865 S.W.2d at 953–54.

has failed to establish that his subjective interest, if any, was one that society would recognize as reasonable.[4] Accordingly, we overrule point two.

### D. Penal Code & Code of Criminal Procedure

In points three and four, appellant argues the "trap and trace device" used violated section 16.03 of the penal code and article 18.21 of the code of criminal procedure. *See* TEX. PENAL CODE ANN. § 16.03 (Vernon 1994 & Supp.1999); TEX.CODE CRIM. PROC. ANN. art. 18.21. As a consequence, he contends that article 38.23 requires that the evidence obtained must be suppressed. Relying on the statutory definition of a "trap and trace device," the State argues that there is no evidence that such a device was used.

The definition of trap and trace found in article 18.21 governs appellant's complaints:

(7) "Trap and trace device" means a device that records an incoming electronic or other impulse that identifies the originating number of an instrument or device from which a wire or electronic communication was transmitted. The term does not include a device or telecommunications network used in providing:

. . . .

(B) the services *referenced* in Section 3.302(g), Public Utility Regulatory Act of 1995 (Article 1446c–0, Vernon's Texas Civil Statutes)[.]

TEX.CODE CRIM. PROC. ANN. art. 18.21, § 1(7)(B) (emphasis added).

Section 3.302(g) of the Public Regulatory Act references "an identification service provided in connection with a '700,' '800,' or '900' access code telecommunications service."[5]

In this case, MHMR's crisis hot line was an 800 number. Because article 18.21 specifically excludes from the definition of "trap and trace" identification services provided in connection with 800 telephone numbers, GTE's trace was not in violation of any statute. We overrule points three and four.

## III. TERMS AND CONDITIONS OF PROBATION

In his remaining points, appellant challenges numerous terms and conditions of his community supervision:

(h) Permit the supervision officer to search your residence, any vehicle you have access to, and any of your possessions for the presence of sexually explicit materials or materials prohibited by these terms and to seize said materials. Such materials seized shall be considered property of the court and shall be safely kept by the supervision officer until called for by the court;

. . . .

(j) Do not accept or maintain employment which brings you into contact with children under 18 years of age, unless approved by the supervision officer;

. . . .

Article 38.23(a) does not confer third party standing to persons accused of crimes, such that they may complain about the receipt of evidence that was obtained by violation of the rights of others, no matter how remote in interest from themselves. *See Fuller*, 829 S.W.2d at 202.

---

4. Appellant has also not established standing under article 38.23. *See Fuller v. State*, 829 S.W.2d 191, 202 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). Since the predecessor of article 38.23(a) was first enacted in 1925, the court of criminal appeals has repeatedly held that "standing" is a necessary prerequisite to "[t]he right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else." *Id.* (quoting *Craft v. State*, 107 Tex.Crim. 130, 295 S.W. 617, 618 (1927)).

5. *See* Act of Mar. 29, 1995, 74th Leg., R.S., ch. 9, § 2, 1995 Tex. Gen. Laws 31, 87, *amended by* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws, 715, 841 (current version at TEX. UTIL.CODE ANN. § 55.102(b)(5) (Vernon 1998)).

(y) Submit to urinalysis tests for alcohol or drug usage at the request of the supervision officer and pay for the cost of these tests within 10 days of giving the specimen;

. . . .

(aa) Submit to clinical polygraph testing and ABEL assessment testing in order to assist in determining whether you are in compliance with your supervision terms and treatment guidelines. These tests will be administered as directed by the Supervision office and sex offender treatment provider. You must pay all costs of such testing.

(bb) Have no direct or indirect contact with the victim. . . .

. . . .

(ff) Do not possess any printed, photographed, or recorded sexually stimulating or sexually oriented material as deemed inappropriate by the supervision office and your counselor or treatment provider, nor go on the premises of or patronize any place where such material or entertainment is available;

(gg) Do not subscribe to or use any online computer services or computer bulletin board systems, either at home or work, unless approved in advance by the supervision officer. Allow the supervision officer to inspect and search all computers and electronic instruments with a modem or device used for the specific purpose of receiving or transmitting electronic data, as well as all disks and other storage systems;

. . . .

(ii) Do not reside, go in, go on, or go within a distance of 1000 feet of a premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility, unless all living arrangements or other exceptions have been reported to and approved by the supervision officer;

(jj) Do not reside in a household with children under eighteen (18) years of age unless approved in advance by the supervision officer, including the residence of the victim . . .;

(kk) Have no contact with children under eighteen (18) years of age, including members of your own household, unless a designated chaperone is present and supervising the contact. A "designated chaperone", excluding [appellant's wife], is a person who has completed a required education program and who is approved by the supervision officer with the agreement of your counselor or treatment provider;

(ll) Upon request of the supervision officer, notify all persons residing at your address, your neighbors, your employer, or other significant person that you are a registered sex offender and the nature of the offense;

. . . .

(nn) Defendant is to participate until released by the court in NCIA House Arrest Program beginning on or before 30 days from release from the Denton County Jail. The defendant is to be confined to his home at all times that he is not performing court-approved activities. Defendant is to abide by the written schedule given to him by [the] supervision officer and is not to tamper with the electronic device in any manner.

■ We review a trial court's imposition of community supervision conditions under an abuse of discretion standard. *See LeBlanc v. State*, 908 S.W.2d 573, 574 (Tex.App.—Fort Worth 1995, no pet.). Article 42.12, section 11 of the code of criminal procedure permits a trial judge to "impose any reasonable condition . . . designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (Vernon Supp.1999); *see also Tamez v. State*, 534 S.W.2d 686, 691 (Tex. Crim.App.1976) (noting a condition should

"have a reasonable relationship to the treatment of the accused and the protection of the public"). In addition, because appellant was convicted of indecency with a child, sections 13B and 14 also apply. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 13B (community supervision for sexual offenses against children), § 14 (community supervision for child abusers and sex offenders).

■■■■■ To be invalid, a condition of community supervision must (1) have no relationship to the crime; (2) relate to conduct that is not in itself criminal; and (3) forbid or require conduct that is not reasonably related to the future criminality of the defendant or does not serve the statutory ends of probation. *See Marcum v. State*, 983 S.W.2d 762, 768 (Tex.App.—Houston [14 th Dist.] 1998, pet. ref'd); *Lacy v. State*, 875 S.W.2d 3, 5 (Tex.App.—Tyler 1994, pet. ref'd); *Simpson v. State*, 772 S.W.2d 276, 280–81 (Tex.App.—Amarillo 1989, no pet.). If the trial court imposes an invalid condition of probation, the proper remedy is to reform the judgment by deleting the invalid condition. *See Martinez v. State*, 874 S.W.2d 267, 268 (Tex.App.—Houston [14 th Dist.] 1994, pet. ref'd) (citing *Ex parte Pena*, 739 S.W.2d 50, 51 (Tex.Crim.App.1987)).

### A. Unreasonable Searches and Seizures

In points five and nine, appellant argues that conditions (h) and (gg) violate his right to be secure from unreasonable searches and seizures. He argues that *United States v. Consuelo–Gonzalez*, 521 F.2d 259 (9 th Cir.1975) and *Tamez* clearly prohibit such "search" conditions.

■■■■■ Without question, a probationer has the right to enjoy a significant degree of privacy. *See Lee v. State*, 952 S.W.2d 894, 904 (Tex.App.—Dallas 1997, no pet.); *Macias v. State*, 649 S.W.2d 150, 152 (Tex.App.—El Paso 1983, no pet.) (citing *Consuelo–Gonzalez*, 521 F.2d at 265 and *Basaldua v. State*, 558 S.W.2d 2, 7

(Tex.Crim.App.1977)); *Tamez*, 534 S.W.2d at 692. Although a probationer has a diminished expectation of privacy by virtue of the "conditions," his rights may be diminished only to the extent necessary for his reformation and rehabilitation. *See Owens v. Kelley*, 681 F.2d 1362, 1367–68 (11 th Cir.1982); *Tamez*, 534 S.W.2d at 692. Probationers simply do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special supervisory restrictions. *See United States v. Tonry*, 605 F.2d 144, 150–51 (5 th Cir.1979); *Consuelo–Gonzalez*, 521 F.2d at 265; *Basaldua*, 558 S.W.2d at 7; *Tamez*, 534 S.W.2d at 692; *Lee*, 952 S.W.2d at 899; *Harrison v. State*, 929 S.W.2d 80, 82–83 (Tex.App.—Eastland 1996, pet. ref'd); *Macias*, 649 S.W.2d at 152. The goals of community supervision require and justify the exercise of supervision to assure that these conditions and restrictions are in fact observed. *See Lee*, 952 S.W.2d at 899; *Harrison*, 929 S.W.2d at 83.

■■■■ As warrantless search conditions, (h) and (gg) seek to rehabilitate appellant in two ways. First, they seek to dissuade him from possessing or viewing sexually explicit material. This is accomplished by making appellant cognizant that unlawful possession can be discovered at any time. Second, the conditions promote appellant's rehabilitation by providing his probation officer with a practical mechanism to determine whether rehabilitation is, in fact, occurring. We do not find that terms (h) and (gg) are unreasonable.

Turning to *Consuelo–Gonzalez* and *Tamez*, the cases relied upon by appellant, the conditions in these cases required probationers to consent to *any* search by law enforcement. Here, neither term (h) or (gg) is so broad in scope. Instead, the conditions imposed in the present case only require appellant submit to search requests by the supervision officer. In addition, any such search is limited in scope to the material expressly listed in those conditions.

However, a plain reading of the second sentence of term (gg) requires that appellant submit to the supervision officer's request to search his employer's computers, electronic equipment, and storage mediums. Appellant cannot agree to such a search. The protectable privacy interest, if any, in these items would belong to appellant's employer and not appellant. We sustain appellant's challenge to the second sentence of term (gg) and order that the second sentence of condition (gg) be deleted from the list of his supervision conditions. Accordingly, we overrule appellant's fifth point and that portion of point nine dealing with condition (h) and the first sentence of condition (gg). Conversely, we sustain the portion of point nine dealing with the second sentence of term (gg).

### B. No Relationship to the Convicted Offense

In point six, appellant argues that condition (h) does not reasonably relate to his conviction; therefore, the court abused its discretion by imposing the condition. We disagree.

While having access to sexually explicit material is not in and of itself a crime, condition (h) does have both a reasonable relationship to the crime and to appellant's future criminality. Appellant was convicted of sexual offenses (indecency with a child), and condition (h) prevents him from having access to material related to the offense for which he was convicted. Furthermore, the complained-of condition is reasonably related to his future criminality. By prohibiting him access to sexually explicit material, the goal is to make it less likely that in the future, appellant would commit additional sexual offenses. We overrule point six.

### C. Improper Delegation of Authority

In point seven, appellant challenges eleven conditions of his community supervision as improper delegations of authority to the supervision officer.

Only the court in which the defendant was tried can fix the terms and conditions of community supervision. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 10(a); *see also DeLeon v. State*, 466 S.W.2d 573, 574 (Tex.Crim.App.1971); *Stephens v. State*, 983 S.W.2d 27, 30 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Absent enumerated exceptions, this authority may not be delegated to a supervision officer or anyone else. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 10(a), (d); *DeLeon*, 466 S.W.2d at 574; *Stephens*, 983 S.W.2d at 30. If the supervision officer is permitted to determine the terms of community supervision, it is an unauthorized delegation of the trial court's authority. *See Cox v. State*, 445 S.W.2d 200, 201 (Tex.Crim.App.1969); *Stephens*, 983 S.W.2d at 30. Conditions should be clearly set out by the judge granting community supervision. *See Cox*, 445 S.W.2d at 201; *Stephens*, 983 S.W.2d at 30.

We begin by noting that article 42.12, section 11 specifically provides that conditions of community supervision may include requiring a defendant to submit to testing for alcohol or controlled substances. Allowing the supervision officer to establish when the testing occurs introduces an element of randomness necessary to insure appellant's compliance. We therefore do not believe that allowing the supervision officer to designate when testing is to take place is an improper delegation of the trial court's authority.

Similarly, article 42.12, section 13B provides for terms (j), (ii), (jj), and (kk). Under that section, a court is required to establish a "child safety zone" mandating that the probationer may not enter the zone. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 13B(a)(1). Subsections (f) and (g) further provide that a supervision officer may permit a probationer to enter a zone on an event-by-event basis under certain enumerated exceptions and that a supervision officer's discretion in permitting a defendant to enter the "zone" is not

prohibited by section 10(a). *Id.* § 13B(f), (g). The complained-of terms are not inconsistent with the conditions set out in subsection (f); accordingly, the trial court's imposition of those terms is not an abuse of its discretion.

■ Next we turn to appellant's challenge of condition (nn) that requires him to participate in a house arrest program and to wear electronic monitoring equipment. The condition mandates appellant be confined to his home at all times unless he is performing a court-approved activity. The condition also requires appellant to abide by the written schedule given to him by his supervision officer. Appellant's contention is that the supervision officer's ability to designate a schedule is error. We do not agree.

Several terms of appellant's supervision require that he undergo testing and treatment. Additionally, several terms also contemplate appellant's employment. Adherence to these terms necessitates, or at a minimum contemplates, that appellant will leave his home. These are the court-approved activities mentioned in condition (nn). The supervision officer's ability to designate a schedule facilitates both appellant's confinement and participation in court-approved activities. We do not find condition (nn) to be an improper delegation of authority.

■ Relevant to (h) and (gg), appellant argues that these conditions allow the supervision officer to define "sexually explicit" or "sexually stimulating" material; thereby, improperly delegating the trial court's authority to the supervision officer. Additionally, appellant complains that term (aa) requires him to submit to clinical testing and because the testing is to be directed by the supervision office and the sex offender treatment provider, it is an improper delegation.

■ These conditions do not violate the general proposition that the duty and responsibility for determining conditions of probation rests squarely upon the judiciary and cannot be delegated. A court, by the very nature of its composition, is inherently incapable of directly implementing every detail of specified community supervision conditions. *See Jones v. State,* 571 S.W.2d 191, 193 (Tex.Crim.App.1978) (condition that probationer follow rules of and participate fully in treatment program was not invalid); *Stephens,* 983 S.W.2d at 30 (supervision officer and probationer were allowed to determine the probationer's monthly reporting date); *Vento v. State,* 724 S.W.2d 948, 951 (Tex.App.—Amarillo 1987, no pet.) (allowing mental health center to test and determine whether person convicted of D.W.I. had a drug or alcohol dependence and, if so, recommend to the probation office a mandatory course of treatment to be followed by defendant). After prescribing, with sufficient clarity, the requisites with which a probationer must comply, a court must, of necessity, use other entities to carry out the details of those requisites. *See Vento,* 724 S.W.2d at 951. In *Salmons v. State,* 571 S.W.2d 29 (Tex.Crim.App.1978), the court of criminal appeals recognized that pragmatic necessity when it upheld a condition of probation requiring a probationer to "attend the clinic and counseling programs prescribed by such authority [Cenikor Foundation] and to obtain a monthly report as necessary from such authority for the probation office and not discontinue cooperating with such authority until he is dismissed from the foundation by competent staff personnel." *Id.* at 29–30. As were the conditions in this case, that condition was attacked as an improper delegation of judicial authority. The *Salmons* court, however, held that this delegated discretion is necessary:

> Although such a condition of probation vests in the treatment facility a certain degree of discretion with regard to the conduct of the probationer while a resident therein, such discretion is necessary if the facility is to be successful in its rehabilitative efforts. Furthermore, there is a clear distinction between rules

imposed by a custodial treatment facility in furtherance of its rehabilitative function and the conditions of probation. We hold that in ordering a probationer to obey the rules and regulations of the community-based facility in which he is placed, a trial court does not thereby improperly delegate to the facility the authority to specify the terms of probation.

*Id.* at 30.

The reasoning in *Salmons* is applicable to the question in this case. Here, as in *Salmons,* the trial court in its community supervision conditions sufficiently and clearly stated the cooperation required of appellant to maintain his community supervision. The fact that the court allowed the supervision officer or treatment provider to prescribe an implementation of the conditions set by the court falls far short of allowing that officer to impermissibly designate an additional condition. *See Vento,* 724 S.W.2d at 951.

■ However, we do not reach the same conclusion for term (ll). Article 42.12 provides that if a defendant is required to register as a sex offender under chapter 62, then registration shall be a condition of community supervision. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 11(e). This was in fact a condition of appellant's supervision. Separate from that reporting requirement, term (ll) allows the supervision officer to decide *when and if* appellant is to notify others of his conviction. Moreover, the term allows the supervision officer to designate those parties that are to be contacted. We believe that such discretion is an improper delegation of the trial court's authority. Therefore, we sustain appellant's challenge to term (ll) and order that the condition be deleted from the list of his supervision conditions. We overrule the remaining portion of appellant's seventh point.

## D. Vague, Indefinite, and Ambiguous

■ In his eighth point, appellant attacks terms (h), (bb), (ff), (gg), (ii), (jj),

(kk), (ll), and (nn) as vague, indefinite, and ambiguous. Because we have struck term (ll) in its entirety, we will not address appellant's contention relevant to that term. In addition, because we struck the second sentence of term (gg), we will only address appellant's complaint relevant to the first sentence of that term. Appellant's point recasts his earlier contentions of improper delegation. In other words, because the supervision officer has some discretion in implementing the terms of his community supervision, the challenged conditions are vague or indefinite.

■ Community supervision is a contractual relationship between the trial court and the offender. Because the violation of the contract could result in the loss of the probationer's freedom, the conditions of supervision should be clear, explicit, and unambiguous so that the probationer knows what is expected and the authorities may know with certainty the parameters of that probationer's prescribed and permitted activities. *See Simpson,* 772 S.W.2d at 278; *Johnson v. State,* 672 S.W.2d 621, 623 (Tex.App.— Corpus Christi 1984, no pet.); *Franklin v. State,* 632 S.W.2d 839, 841 (Tex.App.— Houston [14th Dist.] 1982, no pet.).

■ Clearly, a defendant can only be penalized after he has received fair notice of the conditions of community supervision. Thus, for example, appellant could not be penalized for possession of sexually explicit material if he is not fairly informed of what constitutes sexually explicit material. The supervision officer's discretion in implementing the details of appellant's supervision does not in and of itself make the complained-of conditions vague. We overrule point eight.

## E. Reconciliation of Families

■ In point ten, appellant contends that condition (bb) is unreasonable because it violates the public policy of reconciling families. Citing article 42.12, section 14, he argues that in the event that he di-

vorced and a court granted him conservatorship, the supervision term imposed would fail after 90 days. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 14(a). Appellant's reliance is misplaced. The provision regarding conflicts between terms of supervision and orders granting access to a child only applies to *existing* court orders granting access or possession. *See id.* We overrule appellant's tenth point.

### F.  Circumventing Community Supervision

■ In point eleven, appellant argues that term (nn) is unreasonable. because confinement and monitoring circumvent the jury finding that community supervision rather than incarceration was proper. Appellant relies on the reasoning in *Ex parte Gingell,* 842 S.W.2d 284 (Tex.Crim. App.1992) (orig.proceeding) for support. There, the court held "the trial court could impose electronic monitoring only if it could incarcerate [the probationer] as a condition to his probation." *Id.* at 285.

We are not persuaded by appellant's argument. First, the statutory basis underlying the *Gingell* decision has been repealed. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 16, 1987 Tex. Gen. Laws 3750, 3767. Second, article 42.12, sections 11(a)(7) and (17) currently provide that a trial court may require a probationer remain within a specified place and submit to electronic monitoring. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 11(a)(7), (17). We overrule point eleven.

### G.  Reasonably Related to Rehabilitation

■ In his final point, appellant contends that there is no evidence that either alcohol or drugs were involved in committing the sexual offenses. Thus, he argues that condition (y) that requires urinalysis testing, is not related to his rehabilitation. We disagree.

According to terms (b) and (c) that appellant did not challenge, appellant is to refrain from using illegal narcotics and consuming alcoholic beverages. As a con-

sequence, term (y) is a necessary mechanism to determine appellant's compliance with those terms. Moreover, because submission to a urinalysis examination is specifically provided for by article 42.12, section 11(a)(14), we do not find that the trial court abused its discretion by imposing that condition. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 11 (a)(14).

### IV.  CONCLUSION

Because appellant had no reasonable expectation of privacy in numbers dialed from his employer's telephone, and because the methods employed in tracing appellant's call did not violate statutory prohibitions against tracing, the trial court did not err in failing to suppress the challenged evidence. Because we conclude that the second sentence of condition (gg) and all of term (ll) are improper, the judgment of the trial court is reformed to delete those conditions. Appellant's convictions remain valid, and his community supervision continues subject to the remaining valid conditions and any other valid conditions the trial court, in its continuing jurisdiction, deems necessary to impose. As reformed, the judgment is affirmed.