# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 24, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2016-SC-000205-MR

MICHAEL VAUGHAN      APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT
V.      HONORABLE KATHY LAPE, JUDGE
NO. 14-CR-00204

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Michael Vaughan directly appeals from his conditional guilty plea, raising a Sixth Amendment claim for the violation of his right to a speedy trial. This case arose from an armed stand-off that occurred when officers of the Covington Police Department attempted to serve a warrant on Vaughan at his home. After almost two years of proceedings, Vaughan pled guilty to reduced charges of six counts of wanton endangerment in the first degree, and was sentenced to twenty years' imprisonment pursuant to his guilty plea. Vaughan reserved the right to appeal concerning whether his right to a speedy trial was violated. He now brings that direct appeal, claiming his speedy trial right was violated by a 26-month delay between his arraignment and his guilty plea. We conclude that this claim of error does not require reversal, and therefore affirm.

# I. PROCEDURAL AND FACTUAL BACKGROUND.

On December 21, 2013, officers from the Covington Police Department attempted to serve a warrant on Vaughan, but Vaughan barricaded himself in his home with his children, engaging the officers in an armed stand-off. Vaughan fired several shots at the police officers, and struck a police armored vehicle as well as one of the shields of an officer.

Later in the evening, a district judge issued another arrest warrant for Vaughan related to the stand-off. The officers were eventually able to disarm and arrest Vaughan on December 26, 2013. Vaughan had been shot in the stand-off, and was admitted to the hospital until December 30, 2013. After his discharge from the hospital, he was first taken to the Hamilton Detention Center, and then transferred to the Kenton County Detention Center on January 2, 2014. Vaughan's first preliminary hearing was held on January 18, 2014. He was indicted by grand jury on February 27, 2014, and arraigned on March 10, 2014.

At arraignment, the trial court offered to set the first pretrial conference for April 21, 2014, but Vaughan's initial private defense counsel asked for more time due to the "voluminous" discovery; at defense counsel's request, the trial court set the first pretrial conference for May 6, 2014. At that conference, the parties discussed discovery issues, and defense counsel requested another pretrial conference to be set six weeks from then. On June 16, 2014, at the second pretrial conference, defense counsel discussed setting a trial date; the trial court noted that this case was complex with voluminous discovery due to

2

the nature and length of the police stand-off. Defense counsel also notified the court he intended to pursue a mental incapacity for criminal responsibility defense, and would thus need a mental health evaluation of Vaughan. Accordingly, the trial court set the next pretrial conference for a month later.

On July 14, 2014, at the third pretrial conference, defense counsel requested a trial date, despite the fact that he had not yet filed a notice of intent to pursue a mental incapacity defense under RCr[1] 8.07; as a result, the Commonwealth could not yet file its motion to also have Vaughan evaluated. The trial court concluded that it would be pointless to set a trial date because these reciprocal mental health exams would likely take a few months to complete. The trial court set the next pretrial conference for August 5, 2014. However, defense counsel filed the notice of mental health evaluation only the day prior to the pretrial conference; at the pretrial conference, the Commonwealth indicated it could have a response ready in two weeks.

On August 18, 2014, the parties appeared again before the trial court. The trial court acknowledged Vaughan had sent an *ex parte* letter on August 14, 2014 asserting his right to a speedy trial and firing his defense counsel. After some discussion, Vaughan indicated that he would keep his current defense counsel, and he withdrew his letter discharging his initial counsel. The court further noted that the Commonwealth had filed for its own mental health

---

[1] Kentucky Rules of Criminal Procedure.

examination with the Kentucky Correctional Psychiatric Center ("KCPC"), and set another pretrial conference.

On September 29, 2014, Vaughan appeared with new attorneys. Vaughan's new defense counsel notified the trial court that his initial counsel had failed to turn over any of the trial documents to current defense counsel. The court acknowledged that it had received several *pro se* motions from Vaughan asserting his right to a speedy trial, but noted that the delay had been due to Vaughan's initial counsel's inaction and changing defense counsel. Vaughan's new counsel asked that the court set another pretrial conference before setting a trial date, and the court obliged.

On November 10, 2014, defense counsel informed the court that initial counsel had still not turned over the trial documents and discovery and filed a motion to compel, which the court granted. Defense counsel then asked to set a trial date, and the trial court set aside two weeks for the trial, beginning March 10, 2015.

The parties met for the next pretrial conference on February 3, 2015, with a new judge presiding. Defense counsel informed the court that initial counsel had finally turned over his files to the new counsel, but in a large tub with items missing. Defense counsel then filed a motion to compel duplicative discovery by the Commonwealth since they had been unable to compel a complete discovery from initial counsel. After some deliberation, the trial court reluctantly granted the motion to compel the Commonwealth to recreate the discovery file since Vaughan had no other avenue to guarantee complete

4

discovery. Defense counsel also filed a motion to compel a court-ordered mental health evaluation with KCPC, but the trial court noted KCPC has a backlog of cases and would process Vaughan as soon as possible. The Commonwealth notified the court it recently had been made aware of new evidence, and indicated that it would turn over to the defense upon receipt. Defense counsel also noted that more time would be needed to properly determine the salience of several interviews recorded during the investigation.

At the next hearing, on February 24, 2015, defense counsel argued that the Commonwealth had recently provided the defense with a discovery disc containing a prohibitively large number of files. The Commonwealth responded that this disc had been generated by the Bureau of Alcohol, Tobacco, and Firearms ("ATF") as a result of a search warrant, and the Commonwealth gave the defense a copy as soon as the Commonwealth received it. The Commonwealth also brought to the court's attention that it had not yet received discovery regarding Vaughan's mental health evaluation. The trial court stated several times that it did not want to reschedule or delay this trial date, however, it agreed to use the original trial date as an additional pretrial hearing date.

On March 10, 2015, exactly a year from the original arraignment, defense counsel informed the court that Vaughan was in the midst of a hunger strike due to his perception that the Commonwealth had been delaying discovery in violation of his speedy trial rights. The Commonwealth took issue with this assertion and argued that current counsel had never filed a motion

5

for a speedy trial. The trial court noted that the Commonwealth had not been the party requesting continuances, but rather Vaughan's prior counsel had been responsible for the majority of the delay, and that the current delay was not the fault of any current parties. Further, the court noted that an additional mental health evaluation would need to be completed since Vaughan had begun his hunger strike. The trial court continued the trial date to June 23, 2015.

On April 7, 2015, the parties met again to discuss allegations that Vaughan was using his prison laptop to harass a witness. The court granted a protective order and no contact order, set a hearing date in May regarding witness intimidation, and removed Vaughan's laptop from his possession in jail.

On April 16, 2015, defense counsel filed a motion to dismiss all charges against Vaughan for the denial of his speedy trial rights due to "the Commonwealth withholding pertinent information in violation of the Court's March 11, 2014 Discovery Order and Defendant's Due Process rights." Defense counsel alleged the Commonwealth had asked for a continuance on March 10, 2015, and that the defense had been ready to move forward with trial until being "inundated with thousands of documents mere days before trial." The Commonwealth filed a motion in opposition. The trial court addressed the motion to dismiss on June 3, 2015. Defense counsel argued that the Commonwealth had turned over approximately 92,000 text and picture files from ATF's arson investigation, which had been created by ATF in September

6

2014, and 23,000 files from a witness's phone pertaining to the witness retaliation issue. The trial court noted that the delay between creation of these files, and ATF turning them over seemed excessive, but that the Commonwealth was not at fault since neither the court nor the Commonwealth had control over the processes of a federal agency. Further, the court found that Vaughan's voluntary hunger strike necessitated an additional psychiatric evaluation with KCPC. After recognizing that the upcoming trial would need to be continued again, the trial court noted on the record that it wanted Vaughan to have every due process right available to him, but that Vaughan's voluntary actions necessitated further delay out of the court's control. Both parties agreed to keep the previous trial date as a status conference.

At the June 22, 2015 status hearing, the trial court noted Vaughan had not yet been evaluated by KCPC, and set a new status hearing for August 24, 2015, pending the evaluation. Vaughan's competency hearing was held on that date, and he was found competent to stand trial. During the same hearing, defense counsel raised that Vaughan had filed, *pro se*, to have himself declared indigent, and asked that the court pass the motion to the next hearing since she would need time to investigate Vaughan's assets.

At the September 14, 2015 hearing, the court set the case for trial a third time, scheduled for February 23, 2016. All parties were booked until February. The court also set October 15, 2015 for Vaughan's indigency hearing, noting that Vaughan had not yet filed all of the proper paperwork.

On February 15, 2016, Vaughan pled guilty to six counts of wanton endangerment in the first degree, with the plea conditional on the speedy trial issue. The Commonwealth recommended a total of twenty years, and the defense presented evidence and argued for a lower sentence at a mitigation hearing on March 16, 2016. Thereafter, the trial court sentenced to Vaughan to twenty years. He now appeals as a matter of right regarding the speedy trial issue.

## II. ANALYSIS.

Since Vaughan was detained pre-trial, his speedy trial demand is to be treated as "an assertion of the right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution and Section 11 of the Constitution of Kentucky." *Gabow v. Commonwealth*, 34 S.W.3d 63, 69 (Ky. 2000), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 60–61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

A four-factor balancing test (hereinafter "the *Barker* inquiry") is considered in determining whether the Constitutional right to a speedy trial has been violated: "(1) The length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." *Gabow*, 34 S.W.3d at 70, citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "No single one of these factors is ultimately determinative by itself." *Gabow*, 34 S.W.3d at 70.

*(1) Length of Delay.*

8

The "length of the delay[] is the time between the earlier of the arrest or the indictment and the time the trial begins." *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569 (Ky. 2001), citing *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). "The inquiry first must be triggered by a presumptively prejudicial delay. There is no bright line rule for determining what length of delay suffices to trigger the inquiry, but actual prejudice need not be proven to establish a presumptively prejudicial delay." *Gabow*, 34 S.W.3d at 70. Furthermore, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Dunaway*, 60 S.W.3d at 569 (internal quotations omitted).

In this case, the time between Vaughan's arrest for multiple counts of a complex crime in December 2013 and his guilty plea in February 2016 was 26 months. As noted by the Commonwealth, this Court has previously found that a delay of 18 months in a complex murder case gave rise to presumptive prejudice and triggered review. *Bratcher v. Commonwealth*, 151 S.W.3d 332, 344 (Ky. 2004). As such, a 26-month delay between arrest and guilty plea in this complex case involving an armed stand-off with police is a presumptively prejudicial delay triggered further inquiry into the reason for the delay and whether any prejudice resulted. We note however, as this Court has stated before, that "this finding that the length of delay was presumptively prejudicial does not preempt application of the fourth factor: Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks

9

the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.* (internal quotations omitted).

*(2) Reason for the Delay.*

The second prong weighs the reasons for delay, which fall into three general categories: "(1) a deliberate attempt to delay the trial in order to hamper the defense; (2) a more neutral reason such as negligence or overcrowded courts; and (3) a valid reason, such as a missing witness. . . . [D]ifferent reasons should be allocated different weights." *Dunaway*, 60 S.W.3d at 570.

> A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S. Ct. at 2192.

In this case, the first trial was set exactly one year from the arraignment, on March 10, 2015. Any delay from January 2014 until March 2015 is attributable to Vaughan's initial counsel: first, due to a failure to file formal notice of the defense's intent to pursue a mental health defense, and then, after Vaughan fired him, in the delay tendering trial documents to new counsel. The trial court repeatedly urged defense counsel to find a way to be ready by the March 2016 trial date because it did not want to forfeit the previously scheduled two-week block. Although unfortunate for Vaughan, his initial

10

private counsel was nearly solely responsible for this 13-month delay, and thus this period of delay weighs against Vaughan.

Vaughan contends that the Commonwealth caused the delay of the June 2015 trial date by turning over the voluminous ATF and other electronic files so close to the trial date. However, despite the considerable delay between the beginning of the ATF investigation and turning over the files, the Commonwealth was not responsible for ATF's delay in processing the electronic data. The record reflects that the trial court noted on the record that the Commonwealth was not responsible since neither the Commonwealth, nor the trial court, had jurisdiction over this federal agency. When the trial court decided to keep the June 2015 trial date, but use that time as a status conference, defense counsel acquiesced. Further, Vaughan began his voluntary hunger strike during this time, which necessitated additional psychological evaluation that delayed the trial date. Additionally, during this delay, a collateral issue arose with Vaughan's alleged witness retaliation that created additional discovery and necessitated a separate hearing. Therefore, this delay is attributable either to Vaughan or a neutral, valid reason.

The final trial date was set for February 2016. The delay preceding this trial date is due to the time required by KCPC to generate its psychological evaluation, time required to properly certify Vaughan as now indigent and to appoint his current counsel as pro bono, as well as the court's crowded docket. These delays are attributable to Vaughan for the hunger strike, and neutral, valid reasons.

11

As this Court has stated, "[t]he purpose of our analysis is to establish 'whether the government or the criminal defendant is more to blame for [the] delay.'" *Stacy v. Commonwealth*, 396 S.W.3d 787, 796 (Ky. 2013), quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992). The record is clear that the delays in this case are either attributable to Vaughan or for neutral, valid reasons.

*(3) Defendant's Assertion of his Right.*

Vaughan first asserted his right to a speedy trial in his *pro se, ex parte* communication with the trial court in August 2014. That letter addressed both his speedy trial right and his desire to fire his first counsel; he later withdrew his request to fire his attorney, but he did not address his speedy trial assertion. Vaughan made two other clear demands for a speedy trial through his second defense counsel before the final trial date was set; however, his counsel also acquiesced to several continuances, or asked for the delay. Although Vaughan undeniably asserted his right to a speedy trial, both orally and in written motions, we cannot say that Vaughan vigorously asserted his right. *See Stacy*, 396 S.W.3d at 798 ("[W]e cannot say that this factor weighs in Appellant's favor.")

*(4) Prejudice to the Defendant.*

Finally, "we must analyze any alleged prejudice by considering the interests that the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the

12

accused; (3) to limit the possibility that the defense will be impaired."

*Goncalves v. Commonwealth,* 404 S.W.3d 180, 202 (Ky. 2013).

In this case, Vaughan asserts that his pretrial incarceration was oppressive, and that as a result, he lost employment, income, custody of and ability to see his children, continuance of his higher education, and his home. He also argues that this pretrial incarceration "extended and escalated" his anxiety and hindered his ability to defend his case.

### a. Oppressive Pretrial Incarceration

Lengthy pretrial incarceration clearly has society disadvantages, and "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. . . . The time spent in jail is simply dead time." *Barker,* 407 U.S. at 532–33, 92 S. Ct. at 2193.

Vaughan was incarcerated throughout the entire pretrial period, however, he was granted a bond of $250,000, which it appears he was unable to post. Although Vaughan may have been prejudiced by the fact that he was incarcerated during the delay, he has not identified any actual prejudice in preparing his defense that would render this incarceration oppressive. *See Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2192–93.

### b. Anxiety and Concern of the Accused

"[G]eneral complaints about anxiety or concern are insufficient to state a cognizable claim. Thus, we require an affirmative showing of unusual anxiety which extends beyond that which is inevitable in a criminal case." *Stacy,* 396

13

S.W.3d at 799 (internal citations and quotations omitted); *see also Dunaway,*
60 S.W.3d at 572.

Vaughan seems to argue that his hunger strike was a manifestation of
the stress and anxiety of his pretrial incarceration. However, the record
reflects that Vaughan voluntarily undertook this hunger strike as a means of
protest against the trial delays – which actually served to delay his trial even
longer – not because his anxiety made him lose his appetite. Vaughan has
made no showing that he suffered the requisite unusual anxiety as a result of
the charges pending against him.

### c. *Impairment of Defense*

Of these factors, this is the most serious. *Dunaway,* 60 S.W.3d at 572.
As this Court has repeatedly held, speculative, generic, or conclusory claims
about the possibility of an impaired defense are not sufficient to show
prejudice. *Miller v. Commonwealth,* 283 S.W.3d 690, 702–03 (Ky. 2009); *Stacy,*
396 S.W.3d at 799.

Vaughan asserts he was impaired in assisting in his defense, first by the
removal of his laptop, and then, by the "massive" discovery tendered before his
second trial date. Although his counsel stated that Vaughan had been very
helpful in document review and preparing his defense, the record clearly shows
that any hindrance Vaughan faced by the removal of his laptop was a result of
his own misconduct in harassing a witness. If this inability to access his
laptop while incarcerated was burdensome, Vaughan is at fault. Next,
Vaughan asserts that the large amount of discovery tendered in February 2015

14

impaired his defense, but Vaughan has not identified exactly how this electronic discovery resulted in prejudice, especially when he was responsible for the hunger strike that was the reason for delay cited by the trial court. Also, as discussed above, the Commonwealth turned over that discovery almost contemporaneously with receiving it, and the trial court found no misconduct occurred on the part of the Commonwealth. Because Vaughan has failed to show how his defense was impaired as a result of the delay, beyond his vague claims, this interest has not been abridged.

In sum, Vaughan has failed to make an affirmative showing that his incarceration was oppressive, that he suffered unusual anxiety as a result of the delay, or that he suffered actual prejudice to the preparation of his defense. Accordingly, we find that Vaughan suffered no prejudice arising from his pretrial incarceration that would have violated his speedy trial right.

## III. CONCLUSION.

We conclude Vaughan has not been deprived of his speedy trial rights. Although the delay in this case gives rise to presumptive prejudice, either Vaughan was largely responsible for the delays, or the reasons were neutral and valid. Vaughan's assertion of his right to a speedy trial did not outweigh that he either caused or acquiesced to all delays of his trial dates. Last, Vaughan suffered no actual prejudice as a result of the delay.

Accordingly, Vaughan has failed to show that his speedy trial rights were violated by the delay between his demand for a speedy trial and his guilty plea.

15

We find no reversible error, and therefore the Kenton Circuit Court's judgment of conviction and sentence is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate
Frankfort, Kentucky

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky